# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 44725

| | | |
|---|---|---|
| FARON RAYMOND HAWKINS, | ) | 2018 Unpublished Opinion No. 302 |
| | ) | |
| Petitioner-Appellant, | ) | Filed: January 4, 2018 |
| | ) | |
| v. | ) | Karel A. Lehrman, Clerk |
| | ) | |
| STATE OF IDAHO, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Respondent. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Deborah A. Bail, District Judge.

Judgment summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Silvey Law Office Ltd.; Greg S. Silvey, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Chief Judge

Faron Raymond Hawkins appeals from the district court's judgment summarily dismissing his petition for post-conviction relief.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The Idaho Supreme Court made the following summarization of the facts of this case in *State v. Hawkins*, 159 Idaho 507, 509-512, 363 P.3d 348, 350-353 (2015):

> In January of 2008, a jury convicted Hawkins of two counts of robbery. At trial, Hawkins admitted that he robbed banks but claimed that he did so under duress that stemmed from his previous involvement with various government agencies, including the Central Intelligence Agency (CIA) and Defense Intelligence Agency (DIA). Subsequently, the Court of Appeals determined that the district court erred when it did not "*sua sponte* order a psychiatric evaluation and conduct a hearing." *State v. Hawkins*, 148 Idaho 774, 783, 229 P.3d 379, 388 (Ct. App. 2009) (emphasis original) [hereafter *Hawkins I*]. The Court of Appeals vacated Hawkins' judgment of conviction and remanded the case so that Hawkins

1

could undergo a competency evaluation pursuant to Idaho Code sections 18-211 and 18-212. *Id.* Significantly, the Court of Appeals opinion stated:

> Because *it is not possible to retroactively make a determination as to Hawkins' competency* at the time he was tried, we must vacate the judgment of conviction and leave the state free to retry Hawkins if he is found to be competent to stand trial.

*Id.*

On remand, the district court conducted a competency hearing on November 12, 2010, where it heard testimony from licensed psychologist Dr. Chad Sombke and licensed psychiatrist Dr. Michael Estess. Both experts had evaluated Hawkins and determined that Hawkins was competent during the entire course of his legal proceedings. In its order of December 6, 2010, the district court found that Hawkins was competent to stand trial in January of 2008 (the 2010 competency determination). However, the district court determined that the above-quoted language from the Court of Appeals was the law of the case and required it to retry the case. The State successfully moved for leave to pursue a permissive interlocutory appeal to this Court.

On appeal, this Court reversed the district court's decision, holding that "neither the law of the case doctrine nor I.A.R. 38 prevents the district court from making a retroactive competency determination as to Hawkins in this case." *State v. Hawkins*, 155 Idaho 69, 75, 305 P.3d 513, 519 (2013) [hereafter *Hawkins II*]. Due to the narrow issue presented by the permissive appeal, we did not address Hawkins' claim that the 2010 competency determination violated Hawkins' due process rights. *Id.* at 74-75, 305 P.3d at 518-19.

On remand, the State filed a motion asking the district court to take judicial notice of its 2010 competency determination. The district court granted the State's request to take judicial notice of the evidence that led to its 2010 competency determination and determined that it was appropriate to conduct another competency hearing to give Hawkins the opportunity to cross-examine witnesses and present expert testimony. The district court presumed that its previous determination that Hawkins was competent was correct, but it stated this "presumption" would be "subject to cross-examination and hearing from [Hawkins'] expert." The district court set the hearing for August 29, 2013.

On June 6, 2013, Hawkins' retained counsel moved that Hawkins be declared a needy person for the purpose of hiring an expert witness. The district court granted the motion and instructed Hawkins' counsel to "direct any specific requests for services to this Court for prior approval." On June 28, 2013, Hawkins' attorney moved for leave to withdraw because Hawkins no longer wished for the attorney to represent him. At hearing, Hawkins expressed his desire to proceed pro so. The district court stated Hawkins' desire to represent himself was a "conundrum," explaining that Hawkins' pro se representation in a hearing where his main argument was that he was incompetent "creates a real conflict in the court's way of looking at this thing." The district court again explained to Hawkins that he had the right to a public defender and conducted an

2

extensive *Faretta*[1] inquiry. The district court granted Hawkins' request to proceed pro se and appointed the public defender to serve as standby counsel.

Afterwards, Hawkins filed many pro se motions. At a status conference on July 17, 2013, the district court acknowledged these motions but deferred ruling on them because the "sole issue" before it was whether Hawkins was competent to stand trial in 2008. Hawkins informed the district court that he had not subpoenaed Dr. Estess for cross-examination and that he had not met with Dr. Claude Robert Cloninger, the psychiatrist that Hawkins wished to hire as an expert witness. The district court warned Hawkins that his competency hearing was rapidly approaching and that Hawkins needed to subpoena witnesses so that they could testify at the hearing.

Another status conference was held two weeks later. Hawkins told the district court that he had contacted Dr. Cloninger by email and that Dr. Cloninger was "awaiting verification for payment." In response to questioning, Hawkins informed the district court that Dr. Cloninger's fee was $450 an hour and that he would have to be compensated for travel and lodging because he resided in St. Louis, Missouri. The district court found that using public funds to pay for Dr. Cloninger was "not reasonable" and vacated the competency hearing scheduled for August 29, 2013.

On August 13, 2013, the district court issued a written order where it found that the costs for obtaining Dr. Cloninger "could easily exceed $20,000." The district court stated that it had reviewed "the State Board of Medicine list of psychologists and psychiatrists" and determined that "there are many qualified experts in this field in the Boise, Nampa, Caldwell and Twin Falls area that could provide expert opinion to the Court regarding the defendant's competency to proceed now and retroactively." The district court ordered Hawkins to submit to an examination by a local expert, disclose his choice of expert by August 29, 2013, and submit to examination within thirty days of the date of disclosure. The order further provided that "failure of the defendant to submit to examination within this time period will preclude the defendant from presenting expert witness testimony at the retroactive competency hearing." The order also noted, but did not decide, various other motions Hawkins had filed. The district court did, however, deny Hawkins' motion to strike Dr. Estess' testimony "because there is no basis in fact or law to grant such a motion." Hawkins' opening brief does not assert that the district court erred in making these decisions.

On October 7, 2013, the district court issued an order setting a hearing for October 17, 2013, to "select a psychologist/psychiatrist to evaluate the defendant." The order further provided that "in the event the defendant does not submit in writing prior to the hearing his selection of a psychologist/psychiatrist the court then will make the selection."

Hawkins did not notify the district court of his selection before the October 17th hearing. At the hearing Hawkins, once again, told the district court that he wanted Dr. Cloninger to evaluate him. The district court then stated that it would appoint Dr. Robert Engle to evaluate Hawkins and Hawkins responded that

---

[1] *Faretta v. California*, 422 U.S. 806 (1975).

he would not participate in an evaluation by Dr. Engle. After a break to confer with standby counsel, Hawkins requested a seven-day continuance so that he could have time to decide whether his standby counsel would become attorney of record. The district court denied this request, explaining that "[t]his has been going on since April." The district court again took a recess to give Hawkins time to confer with standby counsel. Before recessing, the district court outlined three options for Hawkins, stating:

> [I]f [standby counsel] is going to be your counsel, I'll give him an opportunity to go out in the community, find a psychiatrist or psychologist and testify on your behalf. And that's not going to be revocable on your part. He is going to be your counsel.

> Or Option 2 is that you submit to Dr. Engle's evaluation. The court would appoint Dr. Engle, and he would be given an opportunity to evaluate you, submit a report to the court, [and] proceed accordingly.

> Or Option 3, if you decline to submit to an evaluation by Dr. Engle, the court then will sentence you here forthwith today.

Following the recess, Hawkins informed the district court that he had decided to be represented by standby counsel and suggested that his parents might be able to retain Dr. Cloninger. The district court stated that it was "not going to proceed down that path" without Hawkins showing that his parents had committed to pay Dr. Cloninger. The district court reiterated its decision that Hawkins would not be able to "fire" his attorney if he elected to be represented and that the district court would not condition the appointment of counsel on Hawkins' ability to hire Dr. Cloninger. Hawkins evidently became angry and stated: "Then you should just sentence me today." After determining that standby counsel did not have difficulty communicating with Hawkins during their "brief discussions," and that Hawkins was not on any psychotropic medications, the district court proceeded to sentencing. The district court then found as follows:

> Well, the court will find from the totality of the record that Mr. Hawkins, particularly in light of the extensive motions that he has filed since this was submitted back to the court in April of this year . . . is competent, and he understands the nature of the proceeding, that he has made a decision, and I find him to have made a knowing and intelligent decision to continue to insist that a psychiatrist from St. Louis, Missouri, be appointed to testify on his behalf for his articulated basis for not appointing that psychiatrist, that there have been numerous delays caused as a result of again Mr. Hawkins['] . . . failure to follow through with the court's specific order. The court will find that there has been ample opportunity afforded to Mr. Hawkins to present evidence to the court regarding his mental status at his trial in 2007 [sic].

> The court will find that the testimony and evidence presented to the court by Dr. Estess that Mr. Hawkins was competent to stand trial, that he was at the time of his evaluation

4

by both Dr. Sombke and Dr. Estess was capable of understanding the proceedings, assisting in his defense, and that that remains the case today.

The district court then re-imposed Hawkins' original sentence, consisting of concurrent unified life sentences, with thirty years fixed. Hawkins timely appealed.

Ultimately, the Supreme Court affirmed the judgment and sentences. On February 13, 2015, Hawkins filed a pro se petition for post-conviction relief and a motion for the appointment of counsel. On March 5, 2015, the district court granted Hawkins' motion for appointment of counsel. On September 28, 2015, Hawkins' counsel filed a motion for leave to withdraw as counsel of record, asserting as the bases for his motion that Hawkins was dissatisfied with the representation he had received, no longer wished for counsel to represent him, and was uncooperative with counsel such that counsel could not provide adequate representation. No action was taken on the motion until January 2016 when counsel noticed it for hearing. At the hearing on February 17, 2016, counsel reiterated his request to withdraw and the reasons therefore, including that Hawkins had indicated to counsel that counsel was not authorized to take any action on Hawkins' petition for post-conviction relief. Hawkins also requested that counsel be allowed to withdraw and that another attorney be appointed or, alternatively, that he be permitted to represent himself. The district court denied the motion to withdraw, reasoning that Hawkins had no constitutional right to self-representation and that his case was complex, his pro se petition was "pretty much incoherent," and he would benefit from the assistance of counsel and the filing of an amended petition. The district court also denied Hawkins' request for substitute counsel, stating:

Well, if counsel reviews his records and determines that there is some kind of conflict, I think counsel is experienced and he will know what to do. But I'm not--no one has a right when it's appointed counsel to have a particular appointed counsel. It doesn't work that way.

The district court indicated it may revisit the issue at some later date but stated it "would like to see if things can't get worked out." The court then gave counsel ninety days to file an amended petition.

On March 11, 2016, Hawkins' counsel filed a notice of lodging of pleadings of Faron Hawkins and renewed motion to withdraw, as well as a motion to rescind an April 1, 2015, order which had prohibited Hawkins from filing any pro se pleadings. Between March and June 2016,

counsel filed three more notices of lodging of Hawkins' pro se pleadings. Counsel also filed an affidavit in support of the renewed motion to withdraw, but did not notice the motion for hearing.

In April 2016, the State answered Hawkins' original pro se petition and moved for summary disposition. The State also requested in its motion for summary disposition that the district court take judicial notice of certain parts of the record of the underlying criminal proceeding. The district court did not expressly rule on this motion.

On June 1, 2016, Hawkins' counsel filed a supplemental petition for post-conviction relief, setting forth three new claims and requesting an evidentiary hearing. The supplemental petition was neither signed by Hawkins nor verified as required by I.C. § 19-4902(a). The State did not respond to the supplemental petition. However, on October 19, 2016, the district court issued a notice of its intent to dismiss Hawkins' petition, stating that Hawkins had failed to make a prima facie showing that he was entitled to relief as to any of the claims in his original or supplemental petitions.

After the district court gave notice of its intent to dismiss, Hawkins' counsel filed another motion to withdraw. Counsel stated in the motion that he was requesting a hearing but did not file a notice of hearing with the court. On November 22, 2016, Hawkins' counsel filed an objection to the court's notice of intent to dismiss and a memorandum in support thereof. Concluding that the objection failed to address the deficiencies in the petition referenced in the notice of intent to dismiss, the district court entered an order and a judgment dismissing Hawkins' post-conviction petition in its entirety. Hawkins timely appeals.

## II.

## ANALYSIS

Hawkins argues that the district court erred when it denied appointed counsel's initial motion to withdraw, and again when it did not rule on subsequent motions to withdraw. Hawkins further argues that the district court erred when it failed to take judicial notice of the record in the underlying criminal case and therefore had no record upon which the court could base its dismissal.

A petition for post-conviction relief initiates a proceeding that is civil in nature. I.C. § 19-4907; *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove

6

by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004). A petition must contain much more than a short and plain statement of the claim that would suffice for a complaint under Idaho Rule of Civil Procedure 8(a)(1). Rather, a petition for post-conviction relief must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached or the petition must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations, or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code section 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary

7

dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be appropriate even when the State does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. Over questions of law, we exercise free review. *Rhoades*, 148 Idaho at 250, 220 P.3d at 1069; *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

## A. Appointed Counsel's Motions to Withdraw

Hawkins argues that the district court erred by denying Hawkins' appointed counsel's initial motion to withdraw. Hawkins further asserts that the district court erred in failing to rule on or even hold hearings on counsel's subsequent motions to withdraw.

### 1. Denial of appointed counsel's initial motion to withdraw

Hawkins argues that the district court erred in denying appointed counsel's initial motion to withdraw as counsel in the post-conviction proceedings. Hawkins asserts that the district court placed appointed counsel in an untenable position where he had to review Hawkins' drafted filings and determine if filing them was appropriate, even when those filings contained Hawkins' complaints against appointed counsel. Further, Hawkins avers, one of the filings showed appointed counsel had been named in a lawsuit by Hawkins, creating a clear conflict.

Hawkins has presented no authority in support of his claim. A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997).

8

Regardless, Hawkins' argument fails. If a post-conviction petitioner is unable to pay for the expenses of representation, the trial court may appoint counsel to represent the petitioner in preparing the petition in the trial court and on appeal. I.C. § 19-4904. The decision to grant or deny a request for court-appointed counsel lies within the discretion of the district court. *Grant v. State*, 156 Idaho 598, 603, 329 P.3d 380, 385 (Ct. App. 2014). When a district court is presented with a request for appointed counsel, the court must address this request before ruling on the substantive issues in the case. *Id.* The district court abuses its discretion where it fails to determine whether a petitioner for post-conviction relief is entitled to court-appointed counsel before denying the petition on the merits. *Id.*

In determining whether to appoint counsel pursuant to I.C. § 19-4904, the district court should determine if the petitioner is able to afford counsel and whether the situation is one in which counsel should be appointed to assist the petitioner. *Grant*, 156 Idaho at 603, 329 P.3d at 385. In its analysis, the district court should consider that petitions filed by a pro se petitioner may be conclusory and incomplete. *Id.* Facts sufficient to state a claim may not be alleged because they do not exist or because the pro se petitioner does not know the essential elements of a claim. *Id.* Some claims are so patently frivolous that they could not be developed into viable claims even with the assistance of counsel. *Newman v. State*, 140 Idaho 491, 493, 95 P.3d 642, 644 (Ct. App. 2004). However, if a petitioner alleges facts that raise the possibility of a valid claim, the district court should appoint counsel in order to give the petitioner an opportunity to work with counsel and properly allege the necessary supporting facts. *Grant*, 156 Idaho at 603, 329 P.3d at 385.

In this case, the district court exercised its discretion to appoint Hawkins counsel to represent him on his petition for post-conviction relief. In denying the subsequent motion to withdraw, the district court found that Hawkins' uncooperative behavior was not grounds for withdrawal. The district court further observed that both the court and Hawkins would benefit from counsel's continued appointment, particularly in light of the complexities of the underlying criminal case wherein Hawkins' competency was at issue. Further, the district court deemed Hawkins' pro se petition for post-conviction relief incoherent. In denying Hawkins' oral requests for substitute counsel or, alternatively, self-representation, the district court reasoned that Hawkins had no right to appointed counsel of his choice and again found that Hawkins would benefit from appointed counsel's assistance.

9

Once appointed, counsel may withdraw only upon obtaining leave of the court to do so:

> Except as otherwise provided in this Rule 11(b) and its subsections, or by stipulation and order of the court, no attorney may withdraw as an attorney of record for any party to an action without first obtaining leave and order of the court upon a motion filed with the court, and a hearing on the motion after notice to all parties to the action, including the client of the withdrawing attorney. *Leave to withdraw as a counsel of record may be granted by the court for good cause and upon such conditions or sanctions as will prevent any delay in determination and disposition of the pending action and the rights of the parties*.

I.R.C.P. 11(b)(2) (2015)[2] (emphasis added). Pursuant to the plain language of this rule, a court's decision to grant or deny a motion to withdraw is discretionary, but such motion may only be granted upon a showing of "good cause." When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the court reached its decision by an exercise of reason. *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).[3]

The district court perceived the decision of whether to allow appointed counsel to withdraw was one of discretion and explained that its decision to deny appointed counsel's motion was an exercise of such discretion. In addition, the district court's denial of appointed counsel's motion to withdraw was consistent with applicable legal standards. A petitioner is entitled to conflict-free and effective counsel only when he or she has a constitutional or statutorily guaranteed right to counsel. *See Hall v. State*, 155 Idaho 610, 616, 315 P.3d 798, 804 (2013). On the other hand, a petitioner is not entitled to conflict-free or effective counsel when the trial court has discretion to appoint counsel, as in noncapital post-conviction proceedings. *See Murphy v. State*, 156 Idaho 389, 394-95, 327 P.3d 365, 370-71 (2014). Because Hawkins had no right to counsel, he had no right to conflict-free counsel to assist with his post-conviction

---

[2] On July 1, 2016, Idaho Rule of Civil Procedure 11(b) was amended and renumbered to I.R.C.P. 11.3. However, the amendments were not in effect at the time of Hawkins' proceedings. Accordingly, this opinion cites the rules as they were in effect at the time Hawkins' appointed counsel's motion to withdraw was denied.

[3] Hawkins failed to cite to the standard of review or the particular abuse of discretion component at issue, which is fatally deficient. *State v. Kralovek*, 161 Idaho 569, 575 n.2, 388 P.3d 583, 589 n.2 (2016).

petition. Finally, the district court exercised reason in denying Hawkins' motion for appointment of substitute counsel since neither Hawkins nor counsel provided good cause for the withdrawal. Accordingly, Hawkins has not shown that the district court abused its discretion in denying appointed counsel's motion to withdraw.

### 2. Subsequent motions to withdraw as counsel

Hawkins argues that the district court erred by not ruling on appointed counsel's subsequent requests to withdraw and by not even holding a hearing on the motions. The State responds that Hawkins' counsel failed to notice those motions for hearing pursuant to procedural rules.

In March 2016, when Hawkins' counsel filed his renewed motion to withdraw, I.R.C.P. 11(b)(2) provided that "no attorney may withdraw as an attorney of record for any party to an action without first obtaining leave and order of the court upon a motion filed with the court, and a hearing on the motion after notice to all parties to the action." I.R.C.P. 11(b)(2) (2015). That rule was subsequently amended and thereafter stated, as is applicable to another motion to withdraw by Hawkins' counsel on October 31, 2016, that an "attorney seeking to withdraw must file a motion with the court and set the matter for hearing, and must provide notice to all parties." I.R.C.P. 11.3(b)(1) (eff. July 1, 2016). Although counsel represented in his motions to withdraw that he was requesting a hearing, he did not notice the motions for hearing with the court.

The Idaho Supreme Court addressed a similar issue in *Bettwieser v. New York Irrigation Dist.*, 154 Idaho 317, 297 P.3d 1134 (2013). On appeal from an adverse judgment following a bench trial in a breach of contract action, Bettwieser argued that the district court erred by failing to rule on all of his pretrial motions. The Supreme Court rejected Bettwieser's argument because the record showed Bettwieser, a pro se litigant, never noticed the pretrial motions for hearing. The Court reasoned:

> Attorneys are expected to know the rules of the forum, and pro se litigants are not afforded a more lenient standard. *Michalk v. Michalk*, 148 Idaho 224, 229, 220 P.3d 580, 585 (2009). As explained above, the Rules of Civil Procedure permit a district court to set a party's motion for hearing sua sponte. I.R.C.P. 6(e)(2). However, we also explained that under the local rules of the Fourth Judicial District, parties are required to schedule motion hearings with the clerk of the presiding judge and "only those civil matters which have been scheduled for hearing by the clerks as provided by this rule and noticed for hearing pursuant to Rules 5(a) and 7(b), I.R.C.P., will be heard by the court."

11

Here, the district court reminded Bettwieser on more than one occasion that he must schedule a hearing before the court would rule on a motion. Bettwieser has not identified any instance where the district court failed to address and rule on any motion that Bettwieser had properly scheduled and noticed for hearing. The district court did not err in declining to rule on motions that Bettwieser failed to notice for hearing.

*Bettwieser*, 154 Idaho at 327, 297 P.3d at 1144 (internal citation omitted). *Bettwieser* is instructive in this case. Appointed counsel had an obligation, pursuant to Idaho 4th Jud. Dist. Rule 2, to schedule a hearing on his renewed motions to withdraw. *Bettwieser*, 154 Idaho at 327, 297 P.3d at 1144 Because counsel failed to do so, Hawkins cannot show that the district court erred by not conducting a hearing or ruling on those motions.

Hawkins notes that attachments to counsel's motions contained Hawkins' requests that counsel withdraw and to either appoint substitute counsel or allow Hawkins to proceed pro se. Therefore, Hawkins argues that the right to inquiry into substitute counsel had a due process component. Hawkins points to the holding in *State v. Bias*, 157 Idaho 895, 341 P.3d 1264 (Ct. App. 2014) in support of his contention that this right exists even in a post-conviction case. In *Bias*, this Court stated:

> Finally, some inquiry may be guaranteed by procedural due process. *See Rios-Lopez v. State*, 144 Idaho 340, 342, 160 P.3d 1275[, 1277] (Ct. App. 2007) (The post-conviction petitioner did not enjoy a constitutionally-protected right to counsel; nonetheless, the court considered whether an inquiry was sufficient under general due process principles. Although the right to an inquiry cases were not binding precedent, they were discussed as persuasive authority.).

*Id.* at 898, 341 P.3d at 1267. Thus, Hawkins asserts, the district court had a duty to sua sponte hold a hearing on the renewed motions because the motions, and some of the attached pro se pleadings, alleged a conflict of interest. Contrary to Hawkins' assertions, however, neither *Bias* nor *Rios-Lopez* stand for the proposition that a district court has a duty to conduct a hearing when a post-conviction petitioner or his appointed counsel allege a potential conflict of interest. Rather, *Bias* held only that a criminal defendant requesting substitute counsel based on an alleged conflict of interest has a right to an inquiry stemming from "several interrelated constitutional guarantees," including the Sixth Amendment right to the effective assistance counsel and "constitutional right to refuse counsel and proceed pro se." *Bias*, 157 Idaho at 898, 341 P.3d at 1267.

In *Rios-Lopez*, the district court denied the petitioner's motion for substitute counsel, noting that substitute counsel's failure to contact the petitioner was not grounds for replacing

12

substitute counsel. Further, "procedural due process requires an *opportunity* to be heard." *Rios-Lopez*, 144 Idaho at 343, 160 P.3d at 1278 (emphasis added). In this case, Hawkins' counsel had a full and fair opportunity to present his renewed motions to withdraw. Counsel's failure to follow the procedures necessary to obtain a hearing on his motions does not translate to an error by the district court. The district court did not have an independent duty to inquire into any alleged conflict of interest, and Hawkins has failed to demonstrate that the court violated his right to procedural due process by not conducting a hearing.

**B.      Judicial Notice of Underlying Case**

Hawkins does not challenge the merits of the district court's order summarily dismissing his petition. Rather, Hawkins argues that the district court erred in failing to take judicial notice of the record in the underlying criminal case while also relying on that record in its summary dismissal of Hawkins petition for post-conviction relief. A court's decision to take judicial notice of an adjudicative fact is a determination that is evidentiary in nature and is governed by Idaho Rule of Evidence 201. *Newman v. State*, 149 Idaho 225, 226, 233 P.3d 156, 157 (Ct. App. 2010). We review lower court decisions admitting or excluding evidence under the abuse of discretion standard. *Dachlet v. State*, 136 Idaho 752, 755, 40 P.3d 110, 113 (2002). In reviewing a trial court's exercise of discretion, we consider whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion and consistently with applicable legal standards; and (3) reached its decision by an exercise of reason. *Id.* at 756, 40 P.3d at 114. However, the interpretation of the rules of evidence is a question of law over which we exercise free review. *State v. Young*, 136 Idaho 113, 119, 29 P.3d 949, 955 (2001).

Idaho Rule of Evidence 201(b) provides that a court may take judicial notice of a fact when the fact is capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned. A court must take judicial notice if requested by a party and supplied with the necessary information. I.R.E. 201(d). A district court may take judicial notice of its own record in the case before it. *Larson v. State*, 91 Idaho 908, 909, 435 P.2d 248, 249 (1967); *Newman*, 149 Idaho at 227, 233 P.3d at 158. It is error, however, for the district court to base its decision on judicial notice of the judge's personal recollection of events in the criminal proceeding. *Matthews v. State*, 122 Idaho 801, 807-08, 839 P.2d 1215, 1221-22 (1992).

13

Contrary to Hawkins' arguments, the district court took judicial notice of the record in his underlying criminal case. In its notice of intent to dismiss, the court referenced and quoted at length specific portions of the record from Hawkins' underlying case that it found germane to the claims raised in Hawkins' petition for post-conviction relief. In its order dismissing Hawkins' petition, the court stated that it was relying on "the application and the record in the underlying case." Thus, although not expressly stated, it is clear that the court took judicial notice of the record in Hawkins' underlying criminal case and did not err in summarily dismissing Hawkins' petition. Finally, Hawkins makes no claim that in having reviewed those records that the district court erred in summarily dismissing his petition. As was stated above, a party waives an issue on appeal if either argument or authority is lacking. *Powell*, 130 Idaho at 128, 937 P.2d at 440.

## III.

## CONCLUSION

The district court did not err in denying appointed counsel's motion to withdraw. Further, the district court did not err in not ruling on appointed counsel's subsequent motions to withdraw. Finally, the district court took judicial notice of the record in Hawkins' underlying criminal case and Hawkins has shown no error in the court's summary dismissal of his petition. Accordingly, the district court's judgment summarily dismissing Hawkins' petition for post-conviction relief is affirmed.

Judge GUTIERREZ and Judge Pro Tem WALTERS **CONCUR**.